1812.

CAINES
*v.*
Lessee of
GRANT.

Judgment affirmed.

---

## Lessee of BILLINGTON *against* WELSH.

*Sunbury,*
*Tuesday,*
*June 9.*

THIS was an ejectment for one messuage, one barn, one garden, twenty acres of arable land, ten acres of meadow, and seventy acres of woodland, in the county of *Centre.*

The cause was tried before *Yeates J.* at a Circuit Court in *Bellefont* in *June* 1809, when the following case was in evidence:

In 1787, one *Daniel Turner* made a slight improvement, and obtained a private survey of between 800 and 900 acres, including the premises in question. He married the sister of the defendant *Welsh;* and in consideration of the latter having paid about 20*l.* for him, he agreed to let *Welsh* have 50 acres of land on the west side of *Spring* creek, part of his improvement, and put him in possession where there had been a deadening of 12 or 15 acres made by *Turner.* On the 14th of *September* 1787, *Turner* obtained a warrant for 200 acres, including his improvement, on the great falls of *Spring* creek, on which a survey was made on the 18th of *November* 1802, of 234 acres 27 perches. Previous to this, *Welsh* worked the lands, erected a house and still house, carried on the business of a distillery, and had resided there ever since, having cleared about 15 acres of land. The survey of 1802 was made in strict conformity to the warrant, and included the fifty acres, but it was not intended that

*Where a parol sale of lands has been made, money paid, and possession delivered, the contract is good between the parties; but to make it good against a bona fide purchaser, there must be clear evidence of notice to him, either actual or legal. Legal notice exists only where there is a violent presumption of actual notice. Undisturbed possession by the equitable owner, has generally been considered legal notice; but it must be a clear unequivocal possession. Hence, where A bought by parol from B, a corner of B's tract, paid for it, was put*

into possession and had buildings erected, but at the same time had no survey of the part, or other admeasurement to reduce it to certainty, and on *B's* own part there was a forge, dwelling house, grist and saw mill, and buildings for the workmen, which with *A's* buildings, might strike the eye as one establishment, the possession of *A* was held not to be legal notice of his title to a purchaser at sheriff's sale, under a judgment against *B.* The equity of a second purchaser will prevail over such a title as *A's*, under these circumstances, particularly if *A* gave no actual notice of his title, when he probably knew of the judgment, execution and sale.

*Welsh* should have any right in the warrant, *Turner* meaning at the time to take out other warrants to secure his claim by improvement. *Turner* after the warrant, erected a forge, a grist mill and saw mill, with buildings for their accommodation, and for some time carried on business in good credit. On the 5th of *February* 1798, *Billington*, the lessor of the plaintiff, obtained a judgment against him for 1785*l.* 8*s.* 8*d.*; and in *April* following one *Charles Drum* obtained another judgment for 50*l.* Upon this judgment a *fi. fa.* issued, and was returned " levied on 300 acres more or less in *Patton* township, with a forge, grist, and saw mill thereon." A *pluries vend. exponas* issued returnable to *August* 1801, upon which the premises were struck off to a purchaser, who did not comply with the conditions of sale, and the sale was therefore set aside. A second *pluries venditioni* was awarded to *November* 1801, when the lands were bought for the lessor of the plaintiff, to whom a conveyance was made in *December* following. The defendant's claim involved a control over the water of the creek, which might be of serious detriment to the iron works.

Upon the trial, it was argued for the defendant, that he had a good equitable estate as against *Turner*, and all the world, having notice; and that his actual possession was constructive notice to the lessor of the plaintiff, who was by this circumstance put upon inquiry into the title.

On the other hand it was said, that the omission of *Welsh* to give actual notice of his title, when from his connection with *Turner*, his residence on the land, and the general notoriety of executions and public sales, he must have known of the proceeding against the land as *Turner's* property, was a fraud; and that as to the possession, it was not of that distinct and separate kind that would constitute notice of a distinct title, being in the first place unascertained as to limits and boundary by a survey, and in the next place, combined with a possession by *Turner*, and his workmen, whose different buildings would with those of the defendant strike the observer as one establishment.

His honour charged the jury, that if the defendant really had notice of the execution and sale, it was a fraud to omit warning all persons against purchasing the part claimed by himself. That as to notice from possession, an adverse un-

mixed possession was certainly constructive notice to a purchaser, as in the case of a sale by a trustee out of possession. But here the debtor was in possession also; and though this was not so strong as the case of the lord of a manor, and his cottagers, yet the nature of *Turner's* property required houses &c. for the accommodation of colliers, workmen, and the like; and a possession under such circumstances, would not be such notice as in a common case it might be. As however no cases exactly similar had been shewn, his honour recommended a verdict to be taken for the plaintiff, subject to the further consideration of the question, as a point reserved; but the defendant's counsel not assenting to this, the Court instructed the jury to find for the plaintiff; and after the verdict was so found, it was agreed by the counsel on both sides, that the case should be taken into this Court upon the judge's notes, and here argued as fully as it could be in the circuit court, as upon a motion for a new trial.

*Huston* and *Watts* for the plaintiff.

*Burnside* and *Duncan* for the defendant.

TILGHMAN C. J. The plaintiff was a purchaser at the sheriff's sale, by virtue of an execution levied on a tract of land belonging to *Daniel Turner*. The defendant claims under *Turner* by a parol agreement accompanied with possession. Although our act of assembly requires all contracts concerning land to be reduced to writing, yet under the decisions which have been made, there can be no doubt, but that where the contract has been executed and carried into effect by payment of a valuable consideration and delivery of possession, the contract is binding between the parties. But where a third person is to be affected, the case is more difficult. In order to bind *him*, something must be shown, which makes it unequitable to break the parol contract. The defendant undertakes to show that the plaintiff purchased with notice of the contract; and if so, it would certainly be against equity that he should recover in this suit. But it behoves a person who stands on a defence of this kind, to make out a clear case. No actual notice has been proved, but it is contended that the possession of the defendant was notice *in law*.

These *legal* notices, being sometimes contrary to the *fact*, are confined to cases in which violent presumption of actual notice arises. The undisturbed possession of land, has generally been considered as legal notice, because the fact of possession being notorious, it is sufficient to put the purchaser on his guard, and to induce him to inquire into the title of the possessor. But to intitle the bare possession to such weight, it ought to be a clear unequivocal possession. Let us examine what kind of possession has been proved in the present case. The defendant is the brother-in-law of *Daniel Turner*, and lived at the time of the sheriff's sale, and for a considerable time before, on one corner of *Turner's* tract. *Turner* had erected a forge, grist mill and saw mill, with all those small buildings, which are connected with works of that kind. It is well known that in such cases, the workmen frequently occupy houses with small portions of land annexed to them. And when a person throws his eye over a forge and mills, and the adjacent buildings and inclosures, it naturally occurs to him, that they all belong to the proprietor of the works. The defendant has been guilty of extraordinary negligence; for not only has he omitted to survey and mark the bounds of his claim, but he has given no decided evidence of boundary. His contract was to have fifty acres of land somewhere about his house; but whether he was to cross the stream and include the land on both sides, so as to have the command of the water, was not proved. Now this is a most important circumstance. For if he has the command of the water, which it is said he claims, he may exercise it in such a manner as to do material injury to the iron works erected by *Turner*. The defendant's claim is principally woodland, consequently the knowledge of his possession is so much the more difficult. Under all these circumstances, it would be going too far to say, that such a possession is notice to all the world. How could any man reasonably suppose, that *Turner's* brother-in-law, occupying a small parcel of land at no great distance from the iron works, had good title, not only to the land on which his house and fences stood, but also to the water, to such a degree as to deprive *Turner* of the right of using the stream, to the full extent that his works might require. There is another circumstance unfavourable to the defendant. Connected as he was with *Turner*,

it can hardly be imagined that he was ignorant of the judgment against him, and it became his duty to make known to the world this secret title to part of the land which passed for *Turner's.* It does not appear that he made any publication on this subject. Not having done so, it seems to me, that he acted at his peril, and that he has no right to complain, if his title is impeached by persons who had not actual notice of it. Perhaps in another ejectment, he may make a stronger case. But, on the evidence produced at this trial, I think the judge was right in advising the jury to find for the plaintiff. I am therefore against granting a new trial.

1812.

Lessee of BILLINGTON
*v.*
WELSH.

YEATES J. after stating the case, delivered his opinion as follows:

It was admitted that *Welsh* gave no notice of his equitable title to the sheriff at the time of the levy, or at either of the sales; though it was proved by four witnesses, that the sales intended to be had, were known in the neighbourhood of the land. I thought it reasonable to presume, and so instructed the jury, that the defendant *Welsh* knew of what was going forward, and that he ought to have given notice of his claim to the sheriff, and warned all persons against purchasing, if he really knew of the intended sales. Failing herein, a legal fraud would be imputed to him. This presumption was founded on the notoriety of the premises being taken in execution, and of the intended sales under the sheriff's advertisements;—on the delay to sell till above two years after both judgments;—on one sale being set aside; and on the defendant's living on good terms with his brother-in-law on the same tract of land, and who could not therefore be supposed ignorant of his embarrassments. But it was strenuously contended on the part of the defendant, that his actual possession of the lands, and carrying on a distillery, was constructive notice to a purchaser at the sheriff's sale, and that he was bound to examine into that fact before he bought. No law cases were produced on this point, and my mind was unsettled on the subject. I well recollected that a trustee in *possession* of the estate, conveying for a valuable consideration without notice, the purchaser would hold the estate against the *cestui que* trust; but not so if the latter was in possession at the time. 2 *Fonbl.* 170., 2 *Bla. Com.* 337. But

1812.

Lessee of
BILLINGTON
v.
WELSH.

how far the law obtained as to constructive notices in general cases, or whether it would extend to a case circumstanced like the present, I was not prepared to assert. I therefore advised that the point should be reserved for further consideration. This the plaintiff's counsel acquiesced in, but the defendant's counsel refused to agree thereto. The jury found a verdict for the plaintiff, subject to the Court's opinion on the question of law, considered as a reserved point; and it was agreed by mutual consent, that the argument should be carried into bank, to be there proceeded in, as fully as it might be done in the Circuit Court, on the notes of the trial.

I have had sufficient time to consider the question, which is merely of a legal nature, whether upon the facts disclosed on the trial, there was implied notice to the sheriff's vendee of the defendant's equitable title.

Constructive notice is no more than evidence of notice, the presumptions of which are so violent, that the court will not allow even of its being controverted. If a man confesses notice, that the estate at law was in a third person at the time when he purchased, he is bound to take notice what the trust is. 2 *Freem.* 137, *pl.* 171. It has been determined that a purchaser, *being told* particular parts of the estate were in possession of a tenant, without any information as to his interest, and taking it for granted it was only from year to year, was bound by a lease that tenant had which was a surprise upon him. 2 *Ves. jun.* 440. It was sufficient to put the purchaser upon inquiry, that he was *informed* the estate was not in the actual possession of the person with whom he contracted, that he could not transfer the ownership and possession at the same time, that there were interests as to the extents and terms of which it was his duty to inquire. But notice of a tenancy will not it seems affect a purchaser with constructive notice of the lessor's title. *Sugd. Law of Vend.* 499. And a purchaser *bona fide* and without notice cannot be affected by the mere circumstance of the vendor being out of possession many years. Thus in *Axwith* v. *Plummer*, 3 *Bac. Ab.* 644. *first ed. Mortgage E. s.* 3, where A covenanted to surrender lands to uses, which were enjoyed accordingly, although no surrender was made, and A thirteen years afterwards, surrendered the same lands to B for valuable consideration, without notice of the covenant, B was held

to be intitled to the lands, and the covenantees were left to their remedy at law. This authority, which is marked with approbation by *Sugden* in the page already cited, goes the full length of deciding the present question. It is of peculiar importance, that notice should be given at sheriff's sales of adverse claims; and the observation of lord commissioner *Rawlinson*, 2 *Vern.* 159, that "equity has always been careful not to impeach purchasers by presumptive notice," holds with appropriate force, where lands have been sold by process of law. The interests of debtors, creditors, and purchasers are all involved in the principle. Here no notice whatever was given of the defendant's claim. The advertisement was of 300 acres more or less in *Patton* township with a forge, grist and saw mill thereon, and the lands were so conveyed by the sheriff. A tract of 234 acres 27 perches was surveyed to *Turner* under his warrant for 200 acres on which he dwelled and made valuable improvements: and it is now sought to reduce the quantity sold to 134 acres 27 perches, and to affect the right of the purchaser as to the water of *Spring* creek, which is indispensably necessary to the carrying on of his manufactories. At best the possession of the defendant was of a mixed nature. His pretensions were not defined by marked boundaries or an actual survey. If one inclining to purchase, had previously viewed the premises, he would have seen nothing but what usually occurs, where forges, grist and saw mills are carried on, out-houses and cabins for the accommodation of colliers and other workmen. Without such conveniences, those manufactories could not be carried on. The defendant's holding under such circumstances could not convey the same information, nor put a purchaser upon inquiry in the same manner, as an exclusive unmixed possession, in common cases might reasonably seem to give.

In every view which I have been able to take of the case, I am of opinion, that judgment should be rendered for the plaintiff on the verdict.

BRACKENRIDGE J. being unwell, gave no opinion.

Judgment for plaintiff.