The Executors of James Hodge, deceased, et al.

*v.*

John Amerman et al.

1. Without proof of notice, either actual or constructive, an unregistered title is void, and of no effect against a subsequent judgment creditor of its grantor.

2. The burden of proving notice in such a case rests on the holder of the unregistered title.

3. Constructive notice of an unregistered title is just as effectual as actual notice.

4. Possession, if open, notorious, exclusive and unequivocal, will constitute notice, and such possession may exist without actual residence on the land.

5. It is not necessary, in order to prove notice, to show that the person to be affected by the notice knew of the possession of the other. If the possession of the other is of a character to constitute notice, then notice is a legal deduction from the fact of possession.

On final hearing on bill and answer and proofs taken before a master.

*Mr. R. V. Lindabury*, for complainants.

*Mr. John Schomp*, for defendants.

VAN FLEET, V. C.

The decision of this case turns on a question of notice. On the 21st day of March, 1871, Daniel Polhemus conveyed fourteen and fifty-five hundredths acres of meadow land, lying near Raritan river, between Bound Brook and Somerville, to James Hodge. The purchase-money, $2,182.50, was paid, and the deed delivered near the date of the deed. Mr. Hodge took possession at once. At the date of the conveyance the land was enclosed by a post-and-rail fence, and by a hedge, and has been kept so enclosed ever since. The chief value of the land consisted in the hay and pasture it produced, and it was used by Mr. Hodge up to the time of his death, and has been used by his representatives since, for growing hay and pasture. Since Mr. Hodge's purchase, it has not been used for any other purpose. Mr. Hodge died intestate in March, 1882, and his will was admitted to probate in the following April. The defendants, John and Gilbert S. Amerman, recovered a judgment in the supreme court of this state against Daniel Polhemus on the 10th of February, 1883, for over $300, and under an execution issued on their judgment, on the 5th of January, 1884, caused the land in question to be levied on, and advertised for sale. Mr. Hodge neglected to have his deed recorded. It was not recorded until December 18th, 1883, more than ten months after the defendants recovered their judgment. The complain-

:ants, as representatives and devisees of Mr. Hodge, have filed a bill, asking that the defendants be perpetually enjoined from enforcing their judgment against the land in question, on the ground that the defendants, at the time they recovered their judgment, had both actual and constructive notice of the unregistered title.

Unless the complainants have established the fact of notice to the satisfaction of the court, it is entirely clear that they are not entitled to relief, for the statute in force at the time the unregistered deed was executed, expressly declares that every deed of lands shall be void and of no effect against a subsequent judgment creditor, or *bona fide* purchaser or mortgagee for a valuable consideration, not having notice thereof, unless it shall be recorded within fifteen days after its delivery. *Rev. p. 155 § 14.* Looking at the case in the light of the documentary evidence alone, it is clear that the complainants' title is without the least legal force against the defendants' judgment, and it is equally clear that the only means by which they can make their title valid against the defendants' judgment is by showing that the defendants had notice of their title at the time they recovered their judgment. Such notice may be either actual or constructive, but the burden of proving it is on the complainants. They must prove notice, or the court must adjudge their title void, for such is the condition in which the statute places it. Without proof of notice, an unregistered title, by the plain words of the statute, is void and of no effect against a subsequent judgment creditor of its grantor.

As already stated, the complainants put their right to relief upon both actual and constructive notice. The proof in support of actual notice comes from the mouth of one of their own number. The witness is Mrs. Henrietta Polhemus. She is a daughter of the testator and the wife of the only son of the judgment debtor. She testifies that John Amerman, one of the plaintiffs in the judgment at law, inquired of her, sometime after her father's death, whether he owned any other real estate than a farm which he mentioned, and that she replied, yes, that he also owned a piece of low land, which he had purchased of her father-in-law,

and which lay adjacent to the island farm. She says that he also inquired how many acres the tract contained and how much her father had paid for it, and that she replied she did not know. She further says that this conversation was substantially repeated at a subsequent time. Mr. Amerman, on the contrary, says that no such conversation ever occurred, and that the first information he ever received from anybody that the title to the land in question had been conveyed to Mr. Hodge, he received from his counsel, at a date some months subsequent to the recovery of his judgment. His denial puts the evidence on this point in a state of equipoise. It is certain that both witnesses cannot tell the truth, but, with the means at my command, it is impossible for me to say, with anything like the certainty which should characterize a judicial conviction, which speaks the truth and which does not. The conflict in the evidence might be reconciled, and the testimony of Mrs. Polhemus accepted as trustworthy, were it possible to find in the evidence sufficient proof to justify the belief that her recollection was more perfect and vivid than that of Mr. Amerman, and that she, therefore, testified to that which she distinctly remembered, while he testified from an empty or faded memory, and affirmed that no such conversations took place merely because he had lost all recollection of them. But the proofs will not justify such a belief. Mrs. Polhemus's memory appears to be quite faulty and imperfect. She thinks that she remembers the conversations distinctly, and she repeats them in sufficient detail to render her evidence intelligible and to make her story probable, but she does not recollect how either of the conversations arose, nor who introduced this particular topic, nor how she happened to come in contact with Mr. Amerman on either occasion, nor to whom she first repeated what was said. Her memory is almost a complete blank with respect to everything except what was said on this particular subject. There was nothing in her relations to Mr. Amerman at that time, nor in what was said on this particular subject, which would have been likely to impress this part of the conversation more deeply upon her memory than the other parts, nor to account for her memory retaining this while it allowed the other

Hodge's Executors *v.* Amerman.

parts to escape. It is certain that her memory is not faultless, and when we remember that her evidence belongs to a class which needs to be dealt with, always, with the greatest caution, and when we consider how frequently misunderstandings occur in our verbal intercourse, from the careless use of language by the speaker, or inattention by the hearer, and how liable even a disinterested witness is, in attempting to reproduce a conversation after a considerable lapse of time, to substitute expressions made recently by other persons for those of the speaker whose words he is attempting to repeat, and how great the danger is that even a conscientious person, in trying to narrate a transaction which exists in his memory in a faded or fragmentary state, will, in his effort to make the reproduction seem complete and natural, substitute fancy for fact, or fabricate the missing or forgotten links, it is not too much to say that, with Mr. Amerman's positive denial before the court, there is not sufficient evidence in this case to establish the fact of actual notice.

The proof in support of the facts upon which the claim of constructive notice rests is free from all contradiction or dispute. The land in question, at the time of Mr. Hodge's purchase, was enclosed by a fence and hedge, separating it visibly from the adjacent lands. Mr. Hodge took possession of it immediately after his purchase, and continued in the full and undisputed possession of it up to the time of his death, a period of eleven years. He repaired and reset the fence, trimmed the hedge, annually cut, cured and carried away the grass grown upon the land, and afterwards, each year, used the land for pasture, pasturing his own stock there, as well as the stock of others. He also occasionally had it rolled in the spring for the purpose of making the surface even. The land was subject to overflow by the waters of the Raritan river, when freshets occurred, and usually, after a freshet, Mr. Hodge cleared the land of the drift, gathering and removing such of the drift as could be used for fire-wood and other purposes. He went to the land frequently each year to inspect its condition, in order to give it such attention as it might need. His ownership was so public and notorious that the land was known to the people of the neighborhood

as Hodge's meadow. During the eleven years that his possession continued, his use of the land and his dominion over it were as full, open and exclusive as could be made of and exercised over land of that kind. During that period, so far as appears, his possession was never disturbed or challenged; no other person ever exercised a single act of ownership over the land, nor interfered with his possession, nor enjoyed either the joint or exclusive use of the land. His possession was constant, undisturbed and exclusive, and, so far as it could be of land of this character, it was open, unequivocal and notorious. The possession of those who succeeded to his rights on his death was of the same character precisely as his had been, and is entitled to the same legal effect.

Now, it is well settled in cases of this kind that implied or constructive notice may be just as effectual as actual notice, and that constructive notice may arise from possession alone, but, in order to give it that effect, it must be open, notorious, exclusive and unequivocal. It need not be by actual residence on the land, but where there is no actual *pedis possessio*, dominion must be manifested by such open and notorious acts of ownership as will naturally be observed by others, and the acts must be of a character so certain and definite in denoting ownership as not to be liable to be misunderstood or misconstrued. *Holmes* v. *Stout*, *2 Stock. 419; Coleman* v. *Barklew, 3 Dutch. 357; 4 Kent's Com. 172; 2 Lead. Cas. in Eq. (4th Am. ed.) 180.* But it is not necessary, in order to establish the fact of notice in such cases, to show that the person to be affected by the notice knew of the possession of the other. If the possession of the other is of the character required by the law—if his possession has the notoriety, certainty and exclusiveness which the law says shall constitute notice—then notice is a legal deduction from the fact of possession, and all persons dealing with the title to the land in his possession are chargeable with notice of his possession, whether they have actual knowledge of his possession or not. The reason of the rule is this: That it is the duty of a person, who proposes to deal respecting the title to a particular tract of land, to ascertain, in advance, who is in possession of it, and by what right

he claims to hold it, and if he neglects this duty it is only just that he should be charged with the knowledge that he would have obtained had he performed it. *2 Lead. Cas. in Eq. (4th Am. ed.) 180; Rogers* v. *Jones, 8 N. H. 264; Wickes* v. *Lake, 25 Wis. 71; Buck* v. *Holloway, 2 J. J. Marsh. 163; Billington* v. *Welsh, 5 Binn. 129; Boggs* v. *Varner, 6 Watts & S. 469.*

The decision of this case must be controlled by these rules. In view of them, I think, there can be little doubt that the possession of the complainants, and that of their predecessor in title, was of such character as constitutes notice to all the world of their title. . But there is another part of the evidence which, I think, should be noticed. There is sufficient evidence in the case, I think, to make it the duty of the court to charge the defendants with notice, at the time they recovered their judgment, that their debtor was not in the actual possession of the land in question, and exercised no control over it. The proofs show that Daniel Polhemus left the vicinity of the land in question in the spring of 1874, and took possession of a farm about one mile distant from the place of business of the defendants, and six or seven miles distant from the land in question. The defendants are country merchants. The debt on which their judgment is founded was contracted in 1881 and 1882. Mr. Polhemus remained on the farm near the defendants until after they recovered their judgment, and until the summer of 1883. His family and that of John Amerman were intimate. Mr. Amerman says " they visited at my house, and we at theirs." Mr. Polhemus had lived near the defendants for nearly nine years prior to the recovery of their judgment. For all that time he had been under their observation. He and his family dealt at their store, and they, doubtless, like most cautious dealers, gave a watchful attention to his conduct and movements. They, undoubtedly, therefore knew that he did not have possession of any land, except the farm on which he lived, and that he never went to the land in question, and received nothing from it, and did nothing indicating ownership of it, or right to it. If they had been dealing with him as purchasers or mortgagees, this knowl-

edge would have been sufficient to put them upon inquiry. Lord Rosslyn, in *Taylor* v. *Stibbert, 2 Ves. 436*, said it was sufficient to put a purchaser upon inquiry that he was informed that the estate was not in the possession of the person with whom he dealt. The same doctrine was declared in *Hiern* v. *Mill, 13 Ves. 114*, and Chancellor Vroom recognized and enforced it in *Baldwin* v. *Johnson, Sax. 441*. No reason of either policy or justice suggests itself to my mind which would make the application of a less stringent rule to a judgment creditor wise or proper.

The complainants are, in my judgment, entitled to a decree, but I do not think that they are entitled to costs.. This suit is the direct result of the negligence of their ancestor. He omitted to do what the security of his title required him to do, and this suit is the direct consequence of that omission. I think, therefore, the cause of justice would be much better promoted by compelling the complainants to pay the defendants' costs, were it possible to do so, than by compelling the defendants to pay the complainants' costs. Neither party will be allowed costs against the other.