## Crowell et al. v. Bell, Receiver

*Russell J. Brownback* and *Roger B. Reynolds*, for plaintiffs.

*John H. Longaker*, for defendant.

CORSON, J., July 29, 1940.— . . . In this case Joseph P. White owned a one-half undivided interest in a one-half acre lot on Wellington Road, in Lower Merion Township. The other one-half interest was owned by Marie A. Gunther. Some months prior to January 10, 1938, these two owners placed the property for sale with Durbin and Howard, real estate brokers of Narberth. Durbin and

Howard were made the exclusive agents for the sale of this property. A "For Sale" sign was posted on the property. Some time prior to January 10th, the brokers interested one Hagerty in the purchase of such land and on that date a written agreement of sale was entered into whereby Mr. White and Mrs. Gunther agreed to sell said property to Hagerty, free and clear of encumbrances, for a consideration of $2,625. At that date there were liens of record against the property amounting to $3,874.99. Part of these encumbrances had apparently been paid off, although the record had not been satisfied. At the time that the agreement of sale was signed the land was vacant and without improvement.

Within two days after the signing of the agreement of sale the word "Sold" was placed over the "For Sale" part of the sign on the property, leaving underneath the names of the real estate agents selling the property. Thereafter at various times up to, but prior to, January 19th, certain work was done on the property. A survey, marked by large stakes, was made, showing the boundaries of the property; the location of the proposed house was fixed by stakes with tape or string of some kind running between rather high stakes outlining the proposed buildings.

Prior to the time of the agreement of sale, and possibly for some years prior thereto, the Highland Park Building & Loan Association, of which defendant Secretary of Banking later became the receiver, had held a bond and warrant of Joseph P. White. White knew that he had such bond outstanding. He also knew that the entry of judgment on such bond was imminent and had communicated that fact to the real estate brokers who were acting as his agents.

On January 19, 1938, judgment was entered on this bond in the amount of $4,643.80, in this county. Early in February 1938, settlement was held and apparently the fact that the judgment had been entered was overlooked because a balance of $173.50 was paid to Mr. White by the grantee Hagerty. A house was thereafter erected on

the property and the entire property later conveyed, in accordance with an earlier agreement, to the present plaintiffs. Nothing appears to have been done thereafter until February 27, 1940, when the present defendant issued a writ of fieri facias upon the judgment for the purpose of having the sheriff condemn the property under such judgment. The present bill was thereupon filed.

Plaintiffs contend that, under the facts and the recording acts, the judgment entered against White was subject to the rights of Hagerty under the agreement of sale and that Hagerty, therefore, took the property clear of any lien of the judgment. These recording acts begin with the Act of March 18, 1775, 1 Sm. L. 422, followed by the later Act of May 19, 1893, P. L. 108, Act of May 12, 1925, P. L. 613, and Act of June 12, 1931, P. L. 558. Without going over the earlier acts, the Act of 1925 provided that unrecorded instruments, and in this case the agreement of sale was unrecorded, "shall be adjudged fraudulent and void as to any subsequent bona fide purchaser or mortgagee without actual or constructive notice." The Act of 1931 extends to the holder of a judgment entered subject to an unrecorded instrument the same protection extended in the Act of 1925 to a mortgagee.

Prior to the Act of 1931, it would seem that a person entering a judgment obtained a lien only upon the property of the judgment debtor which he actually owned, irrespective of whether or not the instrument by which he had conveyed title away from himself was or was not recorded. After the Act of 1931, it would appear that the judgment creditor, when entering his judgment, obtains a lien upon the property standing in the name of the judgment debtor on the record, unless such judgment creditor has either actual or constructive notice of the outstanding title.

It is admitted in the present case that defendant judgment creditor had no actual notice of the agreement of sale to Hagerty and the narrow issue to be decided in the

present case is whether or not defendant had constructive notice of Hagerty's title. It is clear that if a house had existed on this property and Hagerty had gone into possession of the house and lived in it on January 10th, such occupancy would have been constructive notice of his title and it would have been the duty of a person taking a mortgage or entering a judgment on such property to investigate the title of the occupant of the land, otherwise the mortgage or judgment would be subject to the title of the occupier of the land: Hood v. Fahnestock, 1 Pa. 470 (1845) ; Hottenstein v. Lerch, 104 Pa. 454 (1882) ; Stonecipher v. Keane, 268 Pa. 540 (1920).

In the Stonecipher case the court said, at page 544:

"The actual visible possession of a tenant is constructive notice both of his interest and that of his landlord . . . A prospective purchaser of land is required to make inquiry of those in possession thereof and, failing to do so, is affected with constructive notice of all that such inquiry would have disclosed. . . . In other words, actual possession is constructive notice of the interest of the possessor in the premises . . . and of his relation thereto. Such possession is evidence of title and in a certain sense a substitute for recording (White v. Patterson, 139 Pa. 429), and is sufficient to put an intending purchaser upon inquiry. . . . The burden here was upon the defendant to make proof of his purchase and of the possession by his tenant, when McGrew bought and when he sold."

Irrespective, however, of whether a house was erected upon the property, if Hagerty or his agents went into possession of the property and the evidence of that possession was visible and notorious, it would be constructive notice to any subsequent vendee of the title of the occupant.

In the present case if defendant, immediately prior to the entry of the judgment, had viewed the premises in question, defendant would have seen a sign giving notice that the property had been sold. Defendant also would have seen the evidence that this particular lot had been

staked off from the surrounding unoccupied ground and that the first steps had been taken in the building of a dwelling house upon the property. Inquiry from the real estate agents, whose names appeared on the sign, would have obtained the facts as to the sale to Leo Hagerty. The cases hold that if the means of obtaining the information are on the property it is the legal equivalent of actual notice: Kinch et ux. v. Fluke et al., 311 Pa. 405 (1933). In that case the court said, at page 408:

"It is conceded that neither of the mortgagees, the Seaboard or Finance Company, made any inquiry of appellants, who were in possession, as to the nature of their title. The mortgagees, therefore, took subject to the interests under the agreement of sale." Upon our finding that under the facts the defendant legally had constructive notice of Hagerty's title, the defendant, in placing the subsequent encumbrance, lost the protection of the recording statutes. . . .