Judge Underwood
delivered the opinion, of-the Court.
John Luttrell was an original, proprietor of one-eighth of the land granted by the legislature of Virginia, in 1778, to/ Richard Henderson & Co. Oconistoto and other Indian'chiefs of the *164 Cherokee nation, on the 17th of March, 1775, conveyed to Richard Henderson, Thomas Hart, Nathaniel Hart, John Williams, John Luttrell, Wm. Johnston, James Hogg, David Hart and Leonard Hendley Bullock, the country bounded by the Cumberland, Ohio and Kentucky rivers, Powell’s mountain and lines running from the sources of Kentucky and Cumberland rivers, south east courses to Powell’s mountain. These individuals constituted the company to which Virginia made the grant of land, on Green river, at its mouth, known as Henderson’s grant, and the grant so made, was deemed an equivalent, for the expenditures of the company, in making the purchase from the Indians,and the advantagesarising to the Commonwealth therefrom; which purchase and deed from the Indians, vested no title to the soil in Henderson & Co. .according to the well settled doctrines of European and American jurisprudence and policy. See III. Kent’s Commentaries, lecture 50; VIII. Wheat. Rep. 543, and this case at law, IV. Litt. 293.
On the 20th March, 1775, John Luttrell attempted, by will, to dispose of his interest in the lands purchased by R. Henderson & Co. from the Cherokee Indians, devising them to- his wife and three brothers. These devisees exercised every act of ownership over the interest of their testator, in the lands granted in 1778, by Virginia, to Henderson & Co. claiming the land so granted, under the will. Charles Buck, the appellant, in 1819, procured a conveyance from the heir at law of John Luttrell, (who was killed by the tories in 1781,)andin March, 1820, instituted an action of ejectment against John Holloway, for the recovery of 300 acres, part of Henderson’s grant, which had been conveyed to said Holloway, by Wm. B. Smith,in May, 1802. Smith asserted title to the land under two deeds of conveyance, one from the widow of John Luttrell and her second husband, John Umstead, dated in October, 1788, (the said widow having previously acquired all the interest of her co-devisees, the brothers of her deceased husband,) which purported to convey to said Smith, one thirty-second part of Henderson’s grant, in its undivided situation; the other dated in April, 1812, executed *165 by said widow and her second husband, by Samuel Hopkins, their attorney in fact, and which last describes the boundaries of the tracts conveyed to said Smith. In 1797, the lands granted to Henderson Co. were laid off into lots, and in August of that year, a lottery took place, for the purpose of assigning to each partner his portion in severalty, and thereupon, a deed of partition was executed by some of the survivors of the company, and the representatives of others. The lands which, in this decision, were allotted to the heirs and assigns of John Luttrell, were again divided, and a particular allotment, by boundary, made to Wm. B. Smith, as set out in the deed of 1812, to him.
Buck succeeded in the action of ejectment. The judgment in his favor was affirmed by this court. The case is reported, IV.Litt. 293, alrea'dy referred to. Holloway then filed his bill in chancery, relying on a sale made by John Luttrell to Richard Henderson, of one fourth part of said Luttrell’s one-eighth part of the tract, granted by the legislature of Virginia, to Henderson & Co. and which said Luttrell bound himself, his heirs, &c. to convey to said Henderson, by his written obligation, bearing date the 4th of October, 1780. This obligation, on the 19th of May, 1788, was assigned to Wm. B. Smith, by Richard Henderson, a son of Richard Henderson, the obligee, styling himself heir at law. The circuit court decreed a perpetual injunction against Buck’s judgment at law, and required him and the representatives of Richard Henderson the elder, to convey, by deeds of quit claim, to the devisees of Holloway, (he having died pending the suit,) their title to the 300 acres of land in controversy.
From a careful examination of the lengthy record which presents the facts of this case, we have determined to affirm the decree of the circuit court. That John Luttrell did execute tlm bond dated the 4th of October, 1780, is satisfactorily established by the witnesses. The deed, from Luttrell’s widow and her second husband, of October, 1788, conveying one fourth of one-eighth of Henderson’s grant, or one thirty-second part, to W m. B. Smith, states it to be *166 the same “which John Luttrell obliged'himself, by bond, to convey to Col. Richard Henderson, and-which said bond was assigned to ffm. B. Smith, by - Richard Henderson, son and heir at law of said CoL Richard Henderson.” The deed made by the same parties in 1812, by their attorney in fact, S. Hopkins, also recognizes the existence of said Luttrell’s bond to said Henderson, in similar language. Umstead and wife swear that the bond was taken in from Smith, upon executing the deed to him. It is clear that it remained perfect until that time. Luttrell’s signature and seal is now torn from it. We are satisfied that was done upon the execution of the deed, which, at the time, was erroneously regarded as a satisfaction of the bond. We perceive no motive which could have influenced Umstead and wife to make the conveyance to Smith, but a belief that the bond held by him on Luttrell, was genuine, that he held it in good faith, and that they, as devisees and owners of Luttrell’s estate, were bound to comply with it. We perceive no possible motive on the part of Smith, to surrender the bond which be held on Luttrell, and to take a deed from those who had no title, but for an honest error which he and others had fallen into, by believing that John Luttrell’s interest in Henderson’s grant, passed under his will, to his devisees. Indeed, the defendant, Buck, in 1804, seems to have been in as great an error on the subject, as Smith ever was; for during that year, Buck accepts a deed from one of the devisees of Luttrell. In the deed of partition of Henderson’s grant, made in 1797, John Umstead was recognized as a proper actor and representative of the interests of John Luttrell, deceased. The error seems to have prevailed, very generally, that Lut-trell’s will passed his interest in the grant, to his devi-sees. In consequence of it, Smith surrendered his bond on Luttrell, and accepted in lieu thereof, a worthless deed, executed by those who had no interest in the premises to part with. Shall it be said that a title bond, cancelled under such circumstances, has lost its efficacy forever, and that the chancellor cannot revive it and enforce a specific execution thereof, by the proper party? Certainly not. It was a palpable mistake of all concerned, which a chancellor will *167 delight to rectify, so that none shall suffer thereby» If Smith had been induced to surrender his bond, through fraud, or if he had lost it accidentally, the chancellor would interpose to aid him. The remedy will and ought to be afforded in case of mistake. Has the bond of Luttrell been cancelled, so long that lapse of time constitutes a bar to any remedy? for the defendant, Buck, endeavors to shelter himself under that cover. Under the particular circumstances of this case, we think time does not afford the defendant a protection against the equitable arm of the chancellor. Now more than forty years have passed since the devisees of Luttrell have exercised acts of ownership, by conveying his estate in satisfaction of his bond, as was thought. The father of the appellees, under this claim, had more than sixteen years actual possession of the land, before the ejectment was brought. The heir, a citizen of Virginia, and for aught that appears in the record, never in the state of North Carolina, where Luttrell lived, and where Smith also resided; or in the state of Kentucky, to which Smith has removed, lies by near forty years after the death of his ancestor, without disturbing the devisees and those in possession under them. He then parts with his title to the defendant, Buck, who had previously recognized the title of the devi-sees. He succeeds against the terre-tenants,and then says it is too late to bring forward old bonds; the claim is stale! True; but it is the supine negligence of the heir which has prevented an investigation of these old transactions at an earlier period. It does not appear that the holder of Lultrell’s bond could have found his heir, who was expressly bound by the bond, at any time, in the state where such holder of the bond resided. Therefore, when the heir or his ven-dee, Buck, comes forward, we think there is nothing against equity or law, which will prevent the investigation of matters, although of long standing, when that investigation goes to the protection of the possession; which is the design of all limitations. But this point is clearly settled in favor of the appellees, by the case of Barbour vs. Whitlock, IV. Monroe, 197.
It has been insisted by the appellant’s counsel, that Umstead and wife are neither competent or credible *168 witnesses. It has happened, contrary to their expectations, no doubt, that they are not entitled to the land under, Luttrell’s will. We do not perceive, therefore, how they can have an interest as between Luttrell’s heir and vendee. Whether the heir or vendee holds the land, cannot affect any of their rights, unless, as is contended, they should be responsible to Smith for the amount of the consideration expressed on the face of their deed to him. The. deed contains a clause of warranty against themselves, their heirs and those claiming under them, but no others, and it is sufficiently obvious, We think, that they were endeavoring to carry into effect the contract of Luttrell; hence we do not perceive any foundation for the alleged responsibility to rest upon. They aré, therefore, competent. We see nothing which renders Mrs. Umslead’s testimony the least unworthy of credit. Her husband’s answer to Farmer’s bill (for Mrs. Umstead did'not swear to it,) con-* tains denials which are inconsistent with the evidence of his wife, and were it even admitted to be totally irreconcileable with his own, yet we are of opinion that all the circumstances show, that their depositions substantially set out the truth.
The assignment of Luttrell’s bond, executed to Col. Richard Henderson, by his son.Richard to Smith* is called in question, but we think it cannot avail the appellant. Col.' Henderson’s representatives are made parties. The assignment is charged in the bill, to have been made with their approval, and this is taken for confessed against them. Holloway’s devi-sees are entitled to their equity.
Buck was not a Iona fide purchaser, without notice. Holloway’s possession and residence on the land, was notice to him. Besides that, had - he examined the Henderson county court clerk’s office, with reasonable diligence, the probability is, that he would have found the deed of record, from Umstead and wife, by their attorney, Hopkins, to Smith, which would have put him on his guard against the effects of this very bond, executed by Luttrell to Henderson. We perceive no ground upon which he can build a complaint, as a bona fide purchaser, without notice. See Brown *169 vs. Anderson, I. Monroe, 201; Hackwith vs. Dawsoh, Idem, 237; Barbour vs. Whitlock, IV. Monroe, 196, and Cotton vs. Ward, III. Monroe, 312.
Petition‘fora re-heating,
Talbott, for appellant; Denny, for appellees.
The division of the lands has been acquiesced in for many years. There is no proof that it was unequal or unjust. There'was no motive to make it so. We shall not disturb it in the absence of proof to establish its injustice.
Decree affirmed with costs.