# CASES IN CHANCERY.

## ROBERT LEWIS *v.* JOHN H. HALL.

A deed of land was made to A. and B. in November, 1822, which was recorded in March, 1823. A. conveyed an undivided half of it to C., by deed dated Feb. 5, 1827, which was recorded Feb. 20, 1827. C. conveyed his undivided half to D., by deed dated April 27, 1833, which was not recorded until August 5, 1845. On the 23d May, 1840, deeds of partition were made between B. and D., which were both recorded on the same 23d of May, 1840. D. conveyed the half which had been set off to him in the partition to E., by deed dated March 14, 1842, which was recorded May 7, 1842; E. conveyed this half to F., by deed dated May 6, 1842, which was recorded May 7, 1842; and on the same day F. gave to E. a mortgage on this half, to secure a part of the purchase money, and also made a lease of it to E. until the first of April thereafter. F. died; and in April, 1848, the administrator of his estate, by order of the Orphans' Court, sold the half to G. and executed a deed to him, which was recorded Feb. 20, 1844. G. conveyed this half to H., by deed dated December 8, 1844, and recorded Nov. 7, 1845. In July, 1844, I. recovered a judgment against C.; and, shortly after, caused an execution to be issued on the judgment and levied on this half, and claimed that, inasmuch as the deed from C. to D. was not recorded at the time of the recovery of his judgment, the half thus held by H. was subject to the judgment and execution, by force of the of the statute of New Jersey, Rev. Stat. 643, sec. 18.

*Held*, that the same facts which would charge a purchaser from C. at the time of the entry of the judgment with constructive notice, would prevent the judgment's becoming a lien on the land thus held by H. That the said statute does not require actual notice; but that constructive notice is sufficient.

N. was a bona fide purchaser for a valuable consideration from M., by deed dated May 6, 1842, recorded May 7, 1842. M. was then in the actual possession and occupancy of the premises thus conveyed by him, a considerable portion of it being cleared, and he cultivating it as a farm. M. had received a deed for the premises on the 14th March, 1842, which was recorded May 7, 1842. In May, 1840, partition, by deeds, of a tract of land including the premises in dispute was made between S. and M.'s grantor, by which the premises in dispute had been set off, by metes and bounds, to M.'s grantor. These deeds of partition were recorded May 23, 1840. The testimony showed that the parts thus conveyed, by metes and bounds, by these deeds of partition, had been by agreement occupied separately before these deeds

of partition were made, according to the boundaries of the separate parts given by those deeds; and that S. and M.'s grantor had possessed and occupied, and exercised the usual acts of possession and ownership, notoriously, from April 27, 1833, on which last mentioned day, C. had conveyed an undivided half of the whole tract to M.'s granor. This deed from C. to M.'s grantor was not recorded until August 5, 1845.

*Held,* that these facts would charge a purchaser from C. in July, 1844, with constructive notice.

On the 27th of November, 1822, the executors of the will of Daniel Stuart, deceased, by virtue of a power in the will for that purpose, sold and conveyed to Jaocb L. Struble and Petèr L. Struble a tract of land in the township of Newton, county of Sussex, containing 246 56–100 acres. This deed was duly recorded on the 6th of March, 1823.

On the 5th of February, 1827, Jacob L. Struble and his wife, for the consideration of $1,000, sold and conveyed to Uzal C. Haggerty the undivided half part of the said tract. This deed was recorded on the 20th of February, 1827.

On the 27th of April, 1833, Uzal C. Haggerty and his wife, in consideration of $1,250, sold and conveyed to Jacob Morris, Peter Morris, Dennis Morris, Elizabeth Morris and Mary Morris his undivided half of the said tract. This deed was not recorded till August 5, 1845.

On the 23d of May, 1840, Peter L. Struble and the Morrises made partition; 123 28–100 acres being conveyed by metes and bounds to Struble and the like quantity to the Morrises. These partition deeds were both recorded May 23, 1840. They describe the tract divided, as the tract conveyed by the executors of Daniel Stuart to Jacob L. Struble and Peter Struble by deed dated November 27, 1822.

On the 14th of March, 1842, the Morrises, by deeds, made partition among themselves of the said 123 28–100 acres which had thus been conveyed to them by metes and bounds, together with other lands which they owned as tenants in common; and in this partition this 123 28–100 was conveyed by the other Morrises to Jacob Morris. This deed states that this 123 28–100 acres is a part of a tract containing 246 56–100 acres, conveyed by the executors of Daniel Stuart to Peter L. Struble and Jacob L. Struble by deed dated November 27, 1822. This deed was recorded May 7, 1842.

On the 6th of May, 1842, Jacob Morris and his wife, for the consideration of $3,936, conveyed this 123 28–100 acres to John Northrup. This deed states that this tract is part of a tract of 246 56–100 acres conveyed by the executors of Daniel Stuart to Peter L. and Jacob L. Struble, by deed dated November 27, 1822. This deed was recorded May 7, 1842.

On the same 6th of May, 1842, Northrup and his wife executed a mortgage to Jacob Morris on the same tract of 123 28–100, to secure $9,826 of the purchase money. This mortgage was recorded May 7, 1842.

On the same 6th of May, 1842, Northrup, by lease in writing under seal, stating that Jacob Morris had that day sold to him the said farm containing 123 acres, leased the same to the said Jacob Morris, in consideration of the interest on the purchase money for the said farm, until the 1st day of April thereafter ; the said Jacob Morris to use the said farm in a farmer-like manner, and to commit no waste, and to have the privilege of harvesting the crop of winter grain he might sow upon the premises that fall.

After the death of John Northrup, Robert Lewis, the complainant in this suit, as administrator of J. Northrup, under an order of the Orphans' Court of Sussex county, made April 18, 1843, did, by deed dated February 20, 1844, sell and convey this tract of 123 28-100 acres, with other lands, to Arminda Northrup, the widow of J. Northrup, deceased, for the consideration of $34 75. This deed states that this 123 28–100 acres is the same tract that was conveyed to the said J. Northrup, deceased, by Jacob Morris and his wife, by deed dated May 6, 1842, and recorded, &c., and is part of a tract of 246 56–100 acres conveyed by the executors of Daniel Stuart to Peter L. and Jacob L. Struble, by deed dated November 27, 1822. This deed was recorded February 20, 1844, the sale having been confirmed by the Orphans' Court on the 30th of January, 1844.

By deed dated December 8, 1844, acknowledged December 13, 1844, Arminda Northrup, who was a daughter of Robert Lewis, conveyed the lands so conveyed to her by the deed next before mentioned, to the said Robert Lewis, for the consideration therein expressed of $500. This deed was recorded November 17, 1845.

In July, 1844, John H. Hall, the defendant in this suit, recovered a judgment in the Circuit Court of Sussex county against Uzal C. Haggerty, on which judgment execution was issued, returnable the 3d Tuesday in August, 1844, indorsed " Levy the sum really due ; debt $1,027 13 ; costs of judgment, $4 ; costs after judgment, $1." (It was a judgment by confession, on bond and warrant of attorney to confess judgment.) This execution was levied on goods and chattels of Haggerty, and on a farm in the township of Frankford, of 90 acres, and on the undivided half of a house and lot where Hiram Dennis then lived, containing half an acre, and another lot in Franford, containing about ten acres, subject to prior incumbrances.

Another execution was afterwards issued on this judgment against the goods and lands of Haggerty, tested the 4th Tuesday in May, 1845, returnable the first Tuesday in August, 1845 ; under which the Sheriff levied " on the undivided equal one half part of the tract or parcel of land, containing 246 56–100 acres, (describing it, and giving the boundaries thereof as given in the said deed from J. L. Struble and wife to Haggerty,) and stating it to be the same tract conveyed to Haggerty by Jacob L. Struble and wife by deed dated February 5, 1827. This execution was also levied on several other tracts of land, and on personal property of Haggerty.

This execution was levied on the undivided one half the said tract of 246 56–100 acres by the direction of John H. Hall. Under this execution the Sheriff advertised a sale of this property.

The bill states, that from and after the 27th of April, 1833, when Haggerty conveyed his undivided half to the Morrises, the Morrises, or some of them were in the actual possession and occupancy of the same ; and that after the partition between Peter L. Struble and the Morrises, the Morrises, or some of them, were in actual possession up to March, 1842, when the one-half which they got in the partition was conveyed, in severalty, to Jacob Morris, and that he thereupon entered into the occupancy thereof, and was seized and possessed thereof until May 6, 1842, when he sold and conveyed it to J. Northrup ; and that Northrup occupied and possessed it till his death, ————————; and

that his administrator, under an order of the Orphans' Court, sold it, in December, 1843, to pay the debts of Northrup, to the widow of Northrup, who afterwards, in December, 1844, conveyed it to Robert Lewis, her father, who, as administrator &c. of Northrup, had sold and conveyed it to her ; Hall having, between the said administrator's sale and the conveyance by the said widow to Robert Lewis, to wit., on the 27th of June, 1844, obtained a judgment against Haggerty, by confession on bond and warrant of attorney to confess judgment.

The bill states the foregoing facts ; and states, further, that at the time of the said levy under Hall's second execution, Robert Lewis, the complainant, was in the open and peaceable possession of the said 123 28–100, so divided by metes and bounds ; and that he and those under whom he claims had occupied it for upwards of twelve years after it was so sold and conveyed by Haggerty ; that Hall, when he directed the said levy to be made, well knew that the said land was not the property of Haggerty, but that the same had been sold and conveyed by him a number of years before ; and that the persons to whom he sold, or those claiming under them, had, ever since the sale, been in the peaceable and undisturbed possession of the said property, claiming title thereto.

That, though the deed from Haggerty to the Morrises was not recorded before the said levy ; yet that Hall had actual knowledge of the same, as the complainant believes ; and knew that Haggerty had not, for a number of years, owned or possessed the same ; and that partition had been made of the said property, and that the same was held, and for some years had been held in severalty ; that Hall, at the time of the filing of the bill, was, and had been since February, 1841, Clerk of Sussex county; and charges that, while such Clerk, Hall saw, examined and compared the before-mentioned deeds, which were recorded while he was such Clerk.

That Hall has directed the Sheriff to advertise and sell the undivided half so levied on as aforesaid ; and that the Sheriff has advertised the same to be sold on the 13th of November, 1845, to satisfy the said judgment and execution.     The bill

prays an injunction until the further order of the court, restraining the sale, and a perpetual injunction.

The preliminary injunction was granted.

On the 23d of July, 1846, Hall filed his answer. He admits that the executors of Daniel Stuart, deceased, conveyed to Jacob L. and Peter L. Struble the land described in the bill, and that the same was recorded as mentioned in the bill ; that the said Jacob and his wife conveyed to Haggerty an undivided half of said land, and that this deed was recorded as stated in the bill ; and that Haggerty and his wife, about the time mentioned in the bill, sold and conveyed the said undivided half to the Morrises, and that this deed was recorded as stated in the bill ; but he says he has no actual knowledge nor information concerning the same, except from having seen the said deed in the Clerk's office, about the time it is stated in the bill to have been recorded, to wit., about August 5, 1845.

Admits that the Morrises and P. L. Struble, about the time for that purpose mentioned in the bill, executed quit-claims to each other, as mentioned in the bill, and that the same were recorded as stated in the bill.

He says he is informed, and believes it to be true, that the said premises were not occupied, from and after the said conveyance by Haggerty to the Morrises, in the manner and by the persons stated in the bill. On the contrary, he is informed and believes it to be true, that at the time of the conveyance of the undivided half by Jacob L. Struble to Haggerty, one Ahumy Bell resided upon the said premises in the bill mentioned as owned by the said Jacob and Peter Struble ; and that the said Bell had resided there for many years previous, in a small dwelling house erected by him, and occupied the said premises or a small part thereof ; and that after the death of the said A. Bell, his son, Jos. Bell, continued to occupy the said dwelling house and a small part of the said premises which had been cleared until five or six years ago; and that there was, during all that time, but a small clearing on the said premises, principally around the buildings, the residue of the premises consisting of timber and woodlands and barren bushes ; and that he has been

informed and believes that it was understood and believed in the neighborhood that the said A. Bell and Jos. Bell occupied the said premises as tenants of Jacob L. and Peter L. Struble ; that he has also been informed and believes that after Jos. Bell left the said premises, Jacob Morris moved into the house upon the said premises which the said Jos. Bell had occupied, and remained there until he removed to Frankford ; but that this defendant has no actual knowledge of the same ; nor did he know, nor was he informed of the said occupancy by the said Jacob Morris at the time of obtaining his judgment against Haggerty, nor when the levy under his execution was made.

That he has been informed and believes that the said Jacob Morris did, at the time for that purpose mentioned in the bill, make and execute some such deed of conveyance to John Northrup as is stated in the bill, and that the same was acknowledged and recorded in some such manner as is stated in the bill.

That he has been informed and believes that the said J. Northrup and Arminda his wife did, at the time for that purpose stated in the bill, execute some such mortgage to Jacob Morris, and that the same was acknowledged and recorded in some such manner as is stated in the bill.

That he has been informed and believes that the Orphans' Court of Sussex ordered the said administrator of J. Northrup, deceased, to sell his real estate to pay his debts ; and that the said administrator sold the said lands for the purpose mentioned in the bill to the said Arminda Northrup, the widow of the said J. Northrup, and the daughter of the complainant ; but that he has reason to believe, and so charges the truth to be, that the said sale and conveyance to the said Arminda were made under the direction of the complainant, and with the expectation and for the express purpose of being conveyed to the complainant.

He admits that he has been informed and believes that, about the time for that purpose stated in the bill, the said Arminda did make some such conveyance to the complainant as is stated in the bill, and that the same was acknowledged and recorded in some such manner as is therein stated. But he insists that such conveyance and sale was in pursuance of an understanding

and arrangement made at the time of the sale by the complainant
as such administrator, to the said Arminda.

He says that his said judgment against Haggerty was con-
fessed to him for money justly and honestly due him from Hag-
gerty on account of moneys which he had before then been com-
pelled to pay for Haggerty as his surety in a certain bond.

That at the time of the recovery of his said judgment against
Haggerty, and when the levy was made on the said lands and
premises in the bill mentioned, he had no knowledge or informa-
tion that the said lands and premises had ever been in the pos-
session of the said Jacob Morris, Peter Morris, Dennis Morris,
Elizabeth Morris and Andrew Manning, or any of them; nor
had he heard of their having occupied the same; nor did he know
that the said lands had been in the actual occupancy or posses-
sion of the said J. Northrup, or Arminda Northrup, or the com-
plainant, or any of them; nor had he heard of their occupying
the same. Nor does he believe that the said tract of land was
openly occupied by the said Jacob Morris, Peter Morris, Dennis
Morris, Elizabeth Morris and her husband Andrew Manning,
and Mary Morris, or any of them, during all the time from and
after April 27, 1833, up to March 14, 1842, as stated in the
bill. On the contrary, he has been informed and believes, and
so charges the truth to be, that the greater part of the said
premises consisted of timber and woodlands and barren bushes,
except a small clearing on said premises around the house
erected by A. Bell and occupied by him, and wherein he resided
for many years and at the time of the conveyance of the said
undivided half of the said tract of land and premises by Jacob L.
Struble to Haggerty; and that, after the death of said A. Bell,
his son Joseph Bell continued to reside on the said premises un-
til the time when the said Jacob Morris moved upon the prop-
erty and took possession of the same as stated in the bill; and
that this was the only occupancy of the said premises which
was apparent or known to the people living in the neighborhood,
as this defendant has been informed and believes. And he has
also been informed that, after the said Jacob Morris moved off
the said premises, the house in which he had resided was left

empty, being old, and has become unfit for use; nor has the same since been occupied by any person.

That he has been informed and believes that, after the said Jacob Morris left the said premises, the said J. Northrup occupied and cultivated some part thereof; that he has been informed that, after the death of J. Northrup, the said Robert Lewis (the complainant) occupied and cultivated some part of the said premises; but that he has no knowledge or information as to any occupancy or possession of the said premises by the said Arminda Northrup, as stated in the bill.

That he has been informed and believes, and so charges the truth to be, that Haggerty, after his said purchase from Jacob L. Struble, never actually occupied the said premises; but that, so far as any possession of the same was apparent, they were occupied by Peter L. Struble or his tenants long after the conveyance by Haggerty and wife was made; and that the greater part of the said tract, being woodland uninclosed, remained in the same situtation after the purchase by Haggerty and after the sale by him; so that no apparent change of possession took place, as it did not appear that there was any occupancy of the said premises, except the occupancy of A. Bell and Joseph Bell as before stated, until the said Jacob Morris entered into the possession of some part thereof.

That at the time when he obtained his said judgment against Haggerty there was not any such occupancy of the said premises as would be apparent; nor was it known to him in whose possession or occupancy the said premises actually were.

He insists that, in searching for titles of land to or from Haggerty, there are no deeds which were recorded prior to the time when he obtained his judgment against Haggerty and when his said levy was made, which would necessarily and probably lead to the knowledge of the conveyance by Haggerty and wife to the Morrises; and he insists that he was not bound to look for deeds from other persons than Haggerty in order to obtain the knowledge of the conveyance of the said tract of land by Haggerty.

He says that, at and before the time when he recovered his said judgment against Haggerty, he had not discovered the said deeds and conveyances or mortgage set forth in the bill, nor the

records of the same in the Clerk's office of Sussex ; nor had he any knowledge of them, or any of them, according to his recollection and belief.

He denies that at and before the time when his said judgment was recovered he knew, or had been informed, that Haggerty had sold or conveyed to the said Jacob, Peter, Dennis, Elizabeth and Mary Morris the undivided half part of the aforesaid tract of 246 56–100 acres ; nor did he at or before the recovery of his said judgment know, nor has any recollection or belief of having heard of the several sales and conveyances as set forth in the bill as being made by Haggerty and wife and subsequently thereto of the said tract of land or any of them.

He says that at and before the recovery of his judgment against Haggerty he did not know, nor had he ever heard, that the said Jacob Morris, Peter Morris, Dennis Morris, Mary Morris, Andrew Manning, John Northrup and Arminda Northrup, or any of them, were in the possession of the said tract of land, claiming and reputed to be the owners thereof.

That at the time of the recovery of his said judgment he resided at Newton, Sussex county, and, as he supposes, about four miles from the said tract of land levied on as aforesaid ; but he has no knowledge of ever having been over the said tract of land until in the month of July, 1845, and after the levy ; when, he believes, he was on a part of this tract ; nor does he believe that he ever passed over the said tract at any other time, unless the public road from Pleasant Valley to Myrtle Grove passes over the same ; but whether it does, he does not know ; nor did he, if he ever passed over the same, know whose land it was, or in whose possession it may have been.

That at the time of the recovery of his said judgment he did not know, nor had he heard, that the said Jacob Morris and his wife had conveyed to the said J. Northrup the said tract of land in the bill set forth, and more particularly described in the said deed from Jacob Morris and his wife to J. Northrup ; nor did he know nor had he heard of the said Northrup being in possession of said tract.

That he does not admit that he had heard that a man by the name of Morris had sold a tract of land to the said J. Northrup ;

1848.]  LEWIS v. HALL.  117

but he expressly denies that he knew or that he had heard that it was the said tract so levied on as aforesaid, or that it was a tract which had been owned by Haggerty ; nor did he hear or know what tract was so conveyed.

He says he commenced acting as Clerk of Sussex, February 15, 1841, and ceased February 14, 1846.

That while he acted as Clerk he generally assisted in comparing the deeds with the records ; but he sometimes had other persons to compare them. But he has no recollection of having examined or compared with the records of deeds in said Clerk's office such of the deeds mentioned in the bill as were recorded while he was Clerk, or any of them. And if he did assist in comparing or examining the same, or any of them, he did so in the regular course of business, and not with any view of tracing titles ; and the contents thereof made no impression on his mind or recollection.

He admits that special directions were given by his attorney to the Sheriff to levy on the undivided half of the said tract of land, but insists that such directions were properly given ; and that, as a judgment creditor of Haggerty, and without notice of any conveyance from him of the said lands and premises, he had a right to levy on and sell the said tract of land for the payment of his said debt.

He says that, inasmuch as the said deed from Haggerty and wife, dated April 27, 1833, and more particularly mentioned in the bill, at the time when he recovered his said judgment and when the levy upon the said property was made, had not been recorded according to law, and he at that time never having seen the said deed, nor having any notice of the said conveyance, he had no legal notice that the said property was not owned by Haggerty at the time of his said judgment and levy ; and insists that, being a judgment creditor of Haggerty, the said conveyance not having been recorded when he obtained his said judgment, and he not having any notice of the said conveyance by Haggerty, the same was, by the statute, absolutely void and of no effect as against him.

Testimony was taken, and the cause was heard upon the pleadings and proofs.

*P. D. Vroom* and *W. Halsted* for the complainant. They cited 1 *Gallison's Rep.* 41 ; 2 *Fonbl. Eq.* chap. 6, sec. 3, note M. ; 1 *Chan. Cases*, 287 ; 2 *Vern.* 662 ; 1 *Atk.* 490 ; 6 *Wend.* 220, 226 ; 4 *N. Hampshire Rep.* 262, 266 ; 2 *Mass. Rep.* 508 ; 2 *Rand. Rep.* 93 ; 3 *Pick. Rep.* 140 ; 4 *Mass. Rep.* 637, 639, 640 ; 2 *Sugd. on Vendors*, 335, 7, 343 ; 2 *Ves. Junr.* 440, 437 ; 14 *Ib.* 433 ; 16 *Ib.* 249, 254 ; 2 *Scho. & Lef.* 583 ; 2 *Swanst.* 181 ; 1 *Meriv.* 282 ; 1 *Jac. & Walk.* 181 ; 2 *Green's Ch.* 154 ; 3 *Ib.* 492 ; 4 *Dana*, 258 ; 6 *Ib.* 59.

*S. G. Potts* and *Gov. Haines* for the defendant. They cited *Rev. Stat.* 643, sec. 18 ; *Patterson's Stat.* 399 ; 2 *Sumner's Rep.* 491, 551 ; *Sugd. on Vend.* (old edit.) 532, 535, 542 ; 2 *Scho. & Lef.* 327 ; 1 *John. Ch.* 574 ; 3 *Atk.* 654 ; 2 *Ib.* 275 ; 12 *John. Rep.* 452, 3 ; 2 *Ib.* 130, 182 ; 8 *Ib.* 137, 9 ; 1 *Story's Eq.*, sec. 399, and note, sec. 400 ; 2 *Sugd. on Vendors*, 339 ; 2 *Myln. & K.* 629, 632, 3 ; 14 *Serg. & Rawle*, 333 ; 1 *Wash. Rep.* 4 ; 8 *Cowen*, 260 ; 10 *John. Rep.* 457 ; 3 *Ves.* 478 ; 2 *Atk.* 275 ; 3 *Sugd.* 451, 3, 473 ; 2 *Pow. on Mortg.* 577, note Y. ; 13 *Ves.* 122 ; 8 *John.* 141 ; 18 *Ib.* 555 ; 1 *Ves. Jun.* 425 ; 1 *Scho. & Lef.* 327, 337 ; 3 *Mod.* 33, 274 ; 19 *Ves.* 440 ; 14 *Mass. Rep.* 269, 303.

THE CHANCELLOR. It was said in argument, on the part of the defendant, that, from the manner in which the complainant got the title in him, he had no equity calling for his protection against the judgment of the defendant.

The question whether the sale by him, as administrator of J. Northrup, deceased, and the subsequent conveyance of the property to him by the purchaser at that sale, were good as between him and those interested in the estate of Northrup, is not before us in this cause. For the purposes of this cause, the complainant stands in the place of J. Northrup, and holds the same position as if the questions involved in this cause were presented in a proceeding in this court between J. Northrup and J. H. Hall as a judgment creditor of Uzal C. Haggerty.

As between them the case stands thus : Northrup was a bona

fide purchaser for a valuable consideration on the 6th of May, 1842, by deed recorded May 7, 1842, from Jacob Morris. Jacob Morris was then in the actual possession and occupancy of the property, a considerable portion of it being cleared, and he cultivating it as a farm. The partition deeds between the Morrises, by which this property was set off in severalty to Jacob Morris, had before been made, and were recorded the same day the deed from Jacob Morris to Northrup was recorded. On the 23d of May, 1840, partition was made between Peter L. Struble and the Morrises, by which this 123 28–100 acres was set off in severalty to the Morrises ; and these partition deeds were recorded May 23d, 1840. The testimony shows that the parts conveyed by metes and bounds by these deeds of partition between Peter L. Struble and the Morrises, had been, by agreement, occupied separately before these deeds were made, according to the boundaries of the separate parts given by these deeds ; and that Peter L. Struble and the Morrises had possessed and occupied and exercised the usual acts of possession and ownership, notoriously, from April, 1833, the time when Haggerty conveyed to the Morrises his undivided half of the property, *i. e.* of the whole tract of 246 56–100 acres. Here was a notorious possession under title, from April 1833, to May 1842, when Northrup bought ; and he bought of a man in the actual possession and occupancy under the same title ; and the partition deeds between Peter L. Struble and the Morrises were on record, recorded May 23, 1840.

Under the circumstances under which Northrup purchased, it cannot be doubted that he would hold against a purchaser under the Haggerty title on the day on which Hall's judgment against Haggerty was entered. Such a purchaser would clearly have been chargeable with notice.

The 18th section of the "Act respecting conveyances" provides, that every deed for lands to any purchaser of the same, made since January 1, 1821, shall be void and of no effect against a subsequent judgment creditor or bona fide purchaser or mortgagee for a valuable consideration, not having notice thereof, unless such deed shall be recorded within fifteen days after the time of signing, sealing and delivering the same.

If this section is to be read so as to exclude constructive notice, then, if a deed is made to-day by A. to B., and recorded 16 days hence, of property of which B. goes into possession, and which he occupies for years and then sells to C., and of which C. goes into possession, and which he occupies for years and then sells to D., all which intermediate deeds are duly recorded, and then E., twelve, fifteen or nineteen years after the deed from A. to B., recovers a judgment against A., the deed from A. to B. is void as against such judgment creditor, unless, before his judgment was entered, he had actual notice of the deed from A. to B. I apprehend that such a reading of this section cannot be sustained.

The section was not intended to exclude the idea that such a state of facts might arise, by sale by the purchaser from A., and by his grantee to another, and so on through several conveyances, through a long course of years, the actual possession accompanying the several titles, and all the intermediate deeds duly recorded, as will charge a creditor obtaining a judgment against A. after all this, and for a debt that may have accrued but yesterday, with constructive notice of the deed from A. to B.

Another view of the statute might be taken. It provides that every deed from a grantor against whom a judgment shall be subsequently recovered, shall be void &c. It does not say that a deed from such grantor's grantee to a bona fide purchaser from such grantee, duly recorded, shall be void against a subsequent judgment creditor of the first grantor. It leaves untouched the doctrine that, though a deed from A. to B. may be void as against a subsequent judgment creditor of A., yet a deed from B. to C., a bona fide purchaser from B., may be good against such subsequent judgment creditor of A.

I am of opinion that a judgment creditor stands on no better ground under this statute than a purchaser; and that what would charge a subsequent purchaser with constructive notice will charge a subsequent judgment creditor with the notice contemplated by this statute. And I am of opinion, further, that the facts in this case would be sufficient to charge a subsequent pur-

chaser, buying at the time the defendant's judgment was entered, with constructive notice.

In reference to the answer in this case, I do not think it comes up to a full denial of actual notice.

Decree for complainant.