## H. C. TACK COMPANY

### *v.*

## MELANCTHON S. AYERS, HENRY A. WILSON and GEORGE L. WILSON.

[Filed August 12th, 1897.]

1. A partition of land held by three brothers as tenants in common was made by mutual release deeds. The deeds releasing the interest of one of the tenants in the land divided and set off to his two brothers, were not recorded within fifteen days, as required by *Gen. Stat. p. 855 § 14*, to make them valid against a subsequent judgment creditor of the transferer.—*Held*, that no equity arose in favor of the grantees as against the judgment creditor to have any further conveyance from the judgment debtor.

2. A chain of title to land showing the title in a father, and a devise by him to three sons as tenants in common, and release deeds from two of the sons to the third, conveying their title in a divided one-third of the land, is not sufficient to charge a purchaser making an examination thereof with notice that the land has been partitioned among the three sons by mutual release deeds.

3. *Gen. Stat. p. 855 § 14* provides that "every deed or conveyance of land which shall not be recorded within fifteen days after its execution and delivery shall be void and of no effect against a subsequent judgment creditor or *bona fide* purchaser, or mortgagee for a valuable consideration, not having notice thereof."—*Held*, that whatever is sufficient to charge a purchaser with notice is sufficient to charge a judgment creditor.

Bill to foreclose mortgage on real estate. Heard on bill, answers and proofs.

*Mr. George P. Rust* and *Mr. John B. Humphreys,* for the complainant.

*Mr. Peter W. Stagg,* for the defendants.

PITNEY, V. C.

The only contested question in the cause is as to the order of priority between the complainant's mortgage and a judgment held by the defendant Ayers, who, as he claims, has a lien upon an undivided portion of the mortgaged premises.

The premises in question consist of a lot of about one acre of unimproved and unoccupied land, devised by a father—David Wilson—to three brothers, Henry A., George L. and Charles B. Wilson.

On April 26th, 1882, the three brothers made a partition of the premises into three equal plots, by three several deeds, all bearing date April 26th, 1882, each expressed to be made in consideration of $1, in each of which two of the brothers released to the third the plot intended to be allotted to him, the result of which was that each brother became seized in severalty of an equal divided one-third part or plot of the acre.

The deed to Charles Wilson was recorded on the 14th of March, 1883, and on the 20th of May, 1890, he conveyed his plot to his two brothers—Henry and George—by deed expressed to be in consideration of $800, which was duly recorded on the 23d of May, 1890. The result of these conveyances was to vest the title to the whole original lot in Henry and George—that is, they were tenants in common of Charles' plot, and each held in severalty one of the other plots.

In that condition of things, Henry and George made the mortgage set out in the bill, dated and recorded in September, 1893, conveying the whole plot to the complainant to secure promissory notes given by them to the complainant. The two deeds, however, from Charles and George to Henry, and Charles

and Henry to George, of the two plots set apart to each of them
in the original partition, were not recorded until the 26th of
March, 1894, leaving the apparent title of those two plots still
in the three brothers. In the meantime, to wit, on the 19th of
February, 1894, one McComb recovered a judgment against
Charles for $486.49 in the Bergen county circuit court, which
was afterwards assigned to the defendant Ayers. Under that
judgment Ayers claims a lien superior to the complainant's
mortgage upon one equal undivided third part of the two several
plots set off to Henry and George. His claim is based upon the
fourteenth section of the "Act respecting conveyances" (*Gen.
Stat. p. 855*), which declares

" that every deed or conveyance of land which shall not be recorded within fif-
teen days after its execution and delivery shall be void and of no effect against
a subsequent judgment creditor or *bona fide* purchaser, or mortgagee for a valu-
able consideration, not having notice thereof."

Counsel for complainant seeks to evade the literal effect of
this statute in several ways. First, he says that by the will
under which the three brothers claim this land the legal title
was not vested in them at the time the judgment was recovered,
and therefore no lien was acquired. Without setting out the
will at length, I think that point cannot be sustained.

His next point is that the legal title having been conveyed
away and the title absolutely vested in the mortgagors before
judgment, there was nothing left for the judgment against
Charles to fasten upon, and that the general rule is that a judg-
ment creditor is not a *bona fide* purchaser for value, and cannot
be classed with a person who has parted with anything of value
on the strength of apparent title, citing, in that behalf, the cases
of *Harney* v. *Bank, 7 Dick. Ch. Rep. 697,* and *Cresse* v. *Secur-
ity Land Co., 9 Dick. Ch. Rep. 447,* and other cases there cited.

The general principle undoubtedly is that a mere judgment
creditor is not entitled to the vantage ground of a *bona fide* pur-
chaser or mortgagee who has parted with value on the strength
of an apparent title; but the difficulty in the way of counsel's
present argument is that the statute in question, as was pointed

out in the cases just cited, places a judgment creditor on a higher plane in this respect than either a purchaser or mortgagee, and it is impossible to avoid the effect of that language. The unrecorded deeds from Charles to Henry and George must be held absolutely void against the judgment creditor unless he had actual or implied notice of them, and the complainant's mortgage must fall with them.

Some evidence was offered as to the possession of this lot by the mortgagors, from which it was faintly argued that a judgment creditor was bound to take notice that they were the exclusive owners; but the proof in that respect failed, and the case must stand unaided by any implied notice arising from possession. In fact, there was no actual, exclusive occupation.

But counsel for complainant placed his case on higher ground and made a further argument, which may be divided as follows: First, he says that the chain of title of the premises indicated clearly to the judgment creditor that there must have been a partition. The interest upon which he claims a lien is, as we have seen, an equal undivided one-third part of the equal divided two-thirds of the whole, viz., the two plots set off to Henry and George, and, in order to show any title to that two-thirds part, defendant is obliged to resort to the title of the three brothers under the will of their father, and, back of that, to the deed to the father on record. He cannot rely upon mere possession in his judgment debtor, for he had no other or greater possession than his brothers had, and, in point of fact, there was no actual possession. This chain of title charges him with notice that his debtor held as tenant in common with his brothers. He then finds the two brothers giving a conveyance to the judgment debtor, for a nominal consideration, of a distinct portion of the premises which, when plotted, shows that it was exactly or nearly a one-third portion, and later the record shows the debtor reconveying to the brothers, for a full consideration, this one-third part.

The contention of counsel of complainant is that these conveyances, in connection with the title to the whole land in the father, and the devise to the three sons clearly indicate that there had

been a conventual partition carried through by the execution of mutual releases.

The precise line of argument is this : that the judgment creditor, or the sheriff as his agent, in looking for landed property upon which to levy, would have found none whatever indicated by any actual possession ; that his next resort, in the ordinary course of business, would have been to search the record of deeds in the name of the debtor as grantee, which would have led him necessarily to the conveyance by his two brothers to him, for a nominal consideration, of a distinct plot of land not marked on the ground by any metes and bounds, and a reconveyance of the same by the debtor, for a valuable consideration, to the two brothers.    Further searching, he would have learned, as a matter *in pais*, that the judgment debtor was the son of a certain man, who was deceased.    Looking, then, in the name of that man as grantee, he would have found a deed to the father of a block of land which, when plotted and placed by its calls on the ground, he would have found included in its metes and bounds the small plot previously conveyed by the two brothers to the debtor, and by the debtor back to the two brothers, and that the small plot was just one-third in size of the whole.    He would then have found that the father had devised that land to the three brothers, and in that way he would have found the title to the whole lot in the three brothers as tenants in common.    Then he would have again met the two conveyances from the two brothers to the debtor, and back to the debtor by the two brothers, of a distinct portion equal in quantity as plotted to one-third of the plot devised.    And this discovery, counsel argues, was enough to put him upon inquiry as to whether or not there had been a partition and joint releases executed, and that if he had inquired of the two brothers, he would have at once ascertained the true facts.

The question is whether such discovery of the situation of the title would have been sufficient notice to him to put him upon inquiry of the two brothers.

It is undoubtedly the rule that the judgment creditor is bound by the contents and recitals in the deeds composing the chain of title of his debtor.    And it must also be admitted, for present

purposes, that if the facts are sufficient to put him upon inquiry, it was inquiry of the two brothers, which must, in the ordinary course of business, have led him to a discovery of the unrecorded conveyances.    This consideration frees the case from some of the embarrassing circumstances found in many of the decided cases, and confines the discussion to the narrow question as to whether the judgment creditor was put upon inquiry.

The circumstances which have been held sufficient to put a party upon inquiry were not such as might excite the suspicion of an unusually cautious or curious person, but such as would arrest the attention of a person of average cautious temperament and ordinary intelligence, and familiarity with the work of looking into titles.

The rule has been stated in a case cited by complainant— *Knapp* v. *Bailey, 79 Me. 195*—as follows : " The doctrine of actual notice implied by circumstances supports the rule that if a party has knowledge of such facts as would lead a fair and prudent man using ordinary caution to make further inquiries, and he avoids inquiry, he is chargeable with notice of the facts which by ordinary diligence he would have ascertained.    As to what would be a sufficiency of facts to excite inquiry is too difficult of definition to admit of any definite rule, each case depending on its peculiar facts."

The question is one of implied notice as distinguished from constructive notice.

There is no difficulty as to the character of the general inquiry into the chain of title.    It is such as a proposed purchaser or mortgagee would make, for although a careful examination of the chain of title is not usual, and is generally unnecessary in making levies under judgments, yet the legislature in this regard has placed judgment creditors and purchasers and mortgagees on the same footing, and whatever will charge purchasers and mortgagees with notice will charge judgment creditors.    Besides, in this case, as we have seen, no levy could have been made without examining the records which would have produced the information above stated.

The only question, then, is whether the circumstances above

stated were sufficient to put a proposed purchaser for value upon notice, and I come, with some regret, to the conclusion that they are not sufficient. It is not worth while to recite the authorities. I have examined all the cases in this state, and many of those cited in the notes to *Le Neve* v. *Le Neve,* 2 *White & T. Lead. Cas.* *688, *689, and also in the *Am. & Eng. Encycl. L., tit.* "*Notice,*" and I find none, nor has the industry of the counsel of complainant been able to point out one that goes so far as I am asked to go here. *Howard Insurance Co.* v. *Halsey, 4 Sandf. 565; S. C. on appeal, 8 N. Y. 271,* may be cited as an extreme case, but it fails to reach the case in hand.

The next point made by counsel is this: granting that the contract for partition rested merely in parol, yet that it was executed on the part of Henry and George by their conveyance to Charles, and hence an equity arose in their favor to have conveyances from Charles for the shares allotted to them severally; that this equity was not discharged by the subsequent conveyances from Charles to them, and that it still exists, and that under the rule acted upon in *Harney* v. *Bank, 7 Dick. Ch. Rep. 697,* it is superior to the judgment. The simple and complete answer to this contention is that the contract for partition was fully executed and fulfilled by the execution and delivery of the deeds by each and all of the parties. This leaves the brothers Henry and George without any equity against Charles in respect of the land in question. I am unable to perceive upon what principle they could call upon him for a further conveyance or conveyances. Their failure to record their deeds was the result of their own neglect, and raised no equity against Charles. To adopt the reasoning of the counsel of complainant on this point would be to repeal the recording act so far as judgments are concerned.

I will advise a decree in accordance with the foregoing views.