49 N.J. Super. 104 (1958)
139 A.2d 324
GEORGE MICHALSKI AND ANGELINA MICHALSKI, PLAINTIFFS,
v.
UNITED STATES OF AMERICA, STATE OF NEW JERSEY, BUILDERS LUMBER & SUPPLY COMPANY, ROLAND BOUCHER AND PHYLLIS BOUCHER, DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided February 27, 1958.
*105 Messrs. George A. Cella and Rhea A. Mudge, attorneys of plaintiffs.
Mr Peter T. Bacsik, attorney of defendant Builders Lumber & Supply Company.
Mr. Herman D. Ringle, attorney of defendant Division of Employment Security of Department of Labor & Industry of New Jersey.
Mr. Chester A. Weidenburner, attorney of defendant United States of America.
FOLEY, J.C.C. (temporarily assigned).
This is an action to quiet title.
The parties have agreed that the matter be submitted for determination upon the pretrial order as amended and briefs. While the defendants do not stipulate the facts recited *106 in the plaintiffs' pretrial factual contentions, they are willing that such statement be accepted by the Court as if proven.
On June 19, 1949 the plaintiffs acquired an undivided one-half interest in real property consisting of two "semidetached" dwellings located at No. 10 and No. 12 Mott Street, Trenton, New Jersey by warranty deed. By the same instrument the remaining undivided one-half interest was conveyed to Attilio Guerriero and Laura Guerriero, respectively the father and mother of the female plaintiff. This deed was recorded in the Mercer County Clerk's office on July 28, 1949.
At the time of the conveyance the four persons named gave back $2,000 mortgage which has since been paid, the plaintiffs contributing 50% of the payment sum.
On December 6, 1949 all four co-tenants conveyed their interest in No. 10 to one Pietro Granaldi.
On May 10, 1950 the Guerrieros conveyed their interest in No. 12 to the Michalskis who, on the same day, either through ignorance or negligence, "recorded" the deed with the City Engineer of the City of Trenton. It was not recorded in the office of the Mercer County Clerk until March 27, 1956.
Meanwhile, the plaintiffs continued in the sole and exclusive possession of No. 12 as they had since the original acquisition of this property, paying all taxes levied on it and defraying the costs of repairs, alterations and improvements amounting to approximately $3,400.
Sometime after disposing of his interest in No. 12 Guerriero embarked upon a business venture which subsequently came a cropper with the result that on February 3, 1955 the U.S. Government filed a lien against him in the amount of $4,263.27 plus interest; on February 8, 1955, April 14, 1955, and November 7, 1955 the Division of Employment Security of this State entered certificates of debt against him aggregating approximately $4,900, and on October 19, 1955 the Builders Lumber & Supply Co. recovered a judgment of $3,936.61 plus costs in this Court.
*107 The remaining fact of importance is that none of the judgment creditors had either actual notice or knowledge of the existence of the unrecorded deed of May 10, 1950 at the time their liens attached to the record title of Guerriero.
The obvious question presented is whether or not the property is aliened in the favor of the defendants, their several judgments having been recovered prior to the recording of the deed by which the plaintiffs acquired the interest of the judgment debtor. The decision turns on a question of notice. The applicable statute N.J.S.A. 46:22-1 provides:
"Every deed or instrument of the nature or description set forth in 46:16-1 of this title shall, until duly recorded or lodged for record in the office of the county recording officer in which the affected real estate or other property is situate, be void and of no effect against subsequent judgment creditors without notice, and against all subsequent bona fide purchasers and mortgagees for valuable consideration, not having notice thereof, whose deed shall have been first duly recorded or whose mortgage shall have been first duly recorded or registered; but any such deed or instrument shall be valid and operative, although not recorded, except as against such subsequent judgment creditors, purchasers and mortgagees." (Italics ours)
Preliminarily it may be said that the settled law of the State is that whatever is sufficient to charge a purchaser with constructive notice is sufficient to charge a judgment creditor with the same. Lewis v. Hall, 7 N.J. Eq. 107, 120 (Ch. 1848); H.C. Tack Co. v. Ayers, 56 N.J. Eq. 56 (Ch. 1897); Majewski v. Greenberg, 101 N.J. Eq. 134, 138 (Ch. 1927).
Although the doctrine of constructive notice is touched upon in Diehl v. Page, 3 N.J. Eq. 143 (Ch. 1834); Losey v. Simpson, 11 N.J. Eq. 246 (Ch. 1856); Havens v. Bliss, 26 N.J. Eq. 363 (Ch. 1875); Cooke v. Watson, 30 N.J. Eq. 345, 352 (Ch. 1879), and Wanner v. Sisson, 29 N.J. Eq. 141, 150 (Ch. 1878), the earliest definitive discussion of the principle in this State appears in Hodge's Ex'rs v. Amerman, 40 N.J. Eq. 99, 103 (Ch. 1885). Hodge purchased a tract of meadow land from Polhemus in 1871, failing to record the deed thereto until December 1883, ten *108 months subsequent to the recovery by the defendants of a judgment against Polhemus. In pertinent effect the statute then in force, was the same as that presently involved. The court, in enjoining the enforcement of the judgment against Hodge's land, said:
"Now, it is well settled in cases of this kind that implied or constructive notice may be just as effectual as actual notice, and that constructive notice may arise from possession alone, but, in order to give it that effect, it must be open, notorious, exclusive and unequivocal. It need not be by actual residence on the land, but where there is no actual pedis possessio, dominion must be manifested by such open and notorious acts of ownership as will naturally be observed by others, and the acts must be of a character so certain and definite in denoting ownership as not to be liable to be misunderstood or misconstrued. Holmes v. Stout, 2 Stock. [10 N.J. Eq.], 419; Coleman v. Barklew. 3 Dutch [27 N.J.L.], 357; 4 Kent's Com. 172; 2 Lead. Cas. in Eq. (4th Am. ed.) 180. But it is not necessary, in order to establish the fact of notice in such cases, to show that the person to be affected by the notice knew of the possession of the other. If the possession of the other is of the character required by the law  if his possession has the notoriety, certainty and exclusiveness which the law says shall constitute notice  then notice is a legal deduction from the fact of possession, and all persons dealing with the title to the land in his possession are chargeable with notice of his possession, whether they have actual knowledge of his possession or not. The reason of the rule is this: That it is the duty of a person, who proposes to deal respecting the title to a particular tract of land, to ascertain, in advance, who is in possession of it, and by what right he claims to hold it, and if he neglects this duty, it is only just that he should be charged with the knowledge that he would have obtained had he performed it. 2 Lead. Cas. in Eq. (4th Am. ed.) 180; Rogers v. Jones, 8 N.H. 264; Wickes v. Lake, 25 Wis. 71; Buck v. Holloway ['s Devisees], 2 J.J. Marsh. 163; Billington ['s Lessee] v. Welsh, 5 Bin. 129; Boggs v. Varner, 6 Watts & S. [Pa.], 469."
In Gardom v. Chester, 60 N.J. Eq. 238, 244 (Ch. 1900), a case factually analogous to this case, it was held that occupation of the premises by the plaintiff for seven months before the defendant recovered a judgment against her grantor afforded the defendant "abundant notice that she was in possession as owner, and the least inquiry made of [her] would have disclosed her unrecorded deed." See also Wood v. Price, 79 N.J. Eq. 620 (E. & A. 1911).
And so to the present day in every reported case in this State in which exclusive possession inconsistent with the *109 record has been open and notorious has the judgment creditor, bona fide purchaser or mortgagee been charged with a duty to inquire of the one in possession concerning the right by which he occupies the premises and been held bound by the knowledge which such inquiry would have revealed. See LaCombe v. Headley, 91 N.J. Eq. 63, 66 (E. & A. 1919); Majewski v. Greenberg, above, 101 N.J. Eq., at page 138. Only in those cases in which the unrecorded owner has not been in actual possession has relief been denied him in the circumstances with which we are confronted. Vide, H.C. Tack Co. v. Ayers, supra; Gawrillow v. Rutkowski, 104 N.J. Eq. 329, 330 (Ch. 1929).
But the question presented is this: Was the sole occupancy of the premises by the plaintiffs inconsistent with the record title of co-tenancy with the Guerrieros? Neither counsel nor the court has come upon any case in this jurisdiction which deals with this precise problem.
However, the proposition has received judicial consideration in other jurisdictions.
In Weisberger v. Wisner, 55 Mich. 246, 21 N.W. 331, 332 (Sup. Ct. 1884), a foreclosure action in which it appeared that the defendant co-tenant held a larger interest in the property involved than shown by the record title, by reason of an unrecorded sale to him of his co-tenants interest prior to the time the latter mortgaged it to the plaintiff, the court held:
"It is true, as complainant says, that the possession was not apparently inconsistent with the record title; * * * and if that were sufficient reason for holding that the possession is no notice of actual rights, the principle on which decisions have been made, giving protection to occupants, would have very limited application * * *. It seems to be unquestionable that Wisner occupied exclusively, and White would have learned this fact on inquiry. No reason is apparent why he should not have been held bound to inquire, as much in this case as in any other."
In Schmidt v. Steinbach, 193 Mich. 640, 160 N.W. 448 (Sup. Ct. 1916), it was held that the actual possession by a tenant in common is sufficient to put another on inquiry and *110 the other is chargeable with knowledge of all the facts which he might have learned in making inquiry of the party in possession, citing Weisberger v. Wisner, supra. The same rule was adopted in Peck v. Williams, 113 Ind. 256, 15 N.E. 270 (Sup. Ct. 1888), wherein the court said that where one tenant in common has purchased and paid for the interest of his co-tenant and has taken exclusive possession of what was theretofore the common estate and made lasting and valuable improvements thereon, before the lien of a judgment attaches a judgment creditor who purchases the apparent interest of the tenant who has sold will be affected with notice of the rights of the tenant in possession. This holding was reiterated in Kirkham v. Moore, 30 Ind. App. 549, 65 N.E. 1042 (App. Div. 1903).
I am satisfied that the sole and exclusive possession of the plaintiffs for a period of seven years made manifest a sufficient inconsistency between occupancy and record title to call upon the judgment creditors to make inquiry with respect to the state of the title notwithstanding the fact of the recorded showing of co-tenancy. Indubitably such inquiry of the plaintiffs would have revealed their status as sole owners. In these circumstances the defendants were chargeable with constructive notice of the nature and extent of the plaintiffs' interest at the time the judgments were recovered and so the property is declared to be free and clear of the resultant liens.
The State of New Jersey asserts that the plaintiffs' claim is barred by reason of the universally accepted rule that the State is protected against suits brought by its own citizens, this immunity being one of the essential attributes of sovereignty. Miller v. Layton, 133 N.J.L. 323, 324 (E. & A. 1945). But this principle is without application to the instant matter. These plaintiffs do not seek to impose a liability on the State nor do they attempt to interfere with a right of the State. Their action is essentially defensive in nature, being brought in the protection of their property rights from unlawful invasion by the sovereignty.
A judgment approved as to form may be submitted.